UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN L. MADDEN and SHELLEY L. MADDEN, husband and wife, and as Trustees of the JOHN L. AND SHELLEY L. MADDEN FAMILY TRUST,<br><br>                Plaintiff,<br>  v.<br><br>UNION PACIFIC RAILROAD COMPANY, a Delaware corporation doing business in the State of Idaho by Certificate of Authority issued by the Idaho Secretary of State as File No. C 125458, and as a successor in interest to SPOKANE INTERNATIONAL RAILWAY CO., a Washington Corporation previously authorized by the Secretary of State, State of Idaho which was forfeited November 30, 1942,<br><br>                Defendants. | Case No. 2:13-cv-00358-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is plaintiffs' Motion to Remand (Dkt. 9). The motion is fully briefed and the Court has determined oral argument would not significantly assist the

decisional process. The Court will therefore resolve the motion without a hearing. As explained below, the Court will grant the motion to remand, but will deny plaintiffs' request for an award of attorney's fees relative to this motion.

## BACKGROUND

John and Shelley Madden own real property in Boundary County, Idaho. They access their property by a roadway that crosses Union Pacific's property. The Maddens allege that this road had been used to access their property for over 40 years, entitling them to a prescriptive easement.

In 2011, Union Pacific installed a gate at the entrance of the Madden easement, "threatening to shut off [the] Maddens' access to their real property." *Mot. Mem.*, Dkt. 9-1, at 2. The Maddens sued for declaratory and injunctive relief in state court. *See* Dkt. 7-1. They alleged four claims: (1) prescriptive easement; (2) easement by necessity; (3) "quiet title and declaratory judgment"; and (4) injunctive relief. Defendants removed the action to this Court based on diversity of citizenship. The Maddens concede diversity but contend that the amount in controversy does not exceed $75,000.

## THE LEGAL STANDARD

Removal from state court is governed by 28 U.S.C. § 1441 and 28 U.S.C. § 1332. Section 1441(b) allows for removal based on diversity of citizenship, which is further defined by § 1332(a) as requiring that (1) the parties have diverse citizenship, and (2) the amount in controversy exceeds the sum or value of $75,000.

Federal courts strictly construe the removal statute against removal. *See Gaus v.*

*Miles*, 980 F.2d 564, 566 (9th Cir.1992). In diversity cases where the amount in controversy is in doubt, there is a presumption against removal jurisdiction, which means the defendant always has the burden of establishing that removal is proper. *See id*. This burden is satisfied if the plaintiff claims a sum greater than the jurisdictional requirement of $75,000 or if the amount claimed is unclear from the complaint and the defendant proves by a preponderance of the evidence that "more likely than not" the jurisdictional requirement is met. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). This "more likely than not" standard strikes an appropriate balance between the plaintiff's right to choose its forum and the defendant's right to remove. *See id*.

To determine whether the defendant has proved that the amount in controversy has been met, may consider "facts presented in the removal petition as well as any summary judgment-type evidence relevant to the amount in controversy at the time of removal. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839 (9th Cir. 2002). Conclusory allegations by the defendant, or speculative arguments about the potential value of an award, however, will not suffice to overcome the traditional presumption against removal jurisdiction. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 375 (9th Cir.1997); *Gaus*, 980 F.2d at 567. "[T]he defendant bears the burden of actually proving the facts to support . . . the jurisdictional amount." *Id.*

Relief which may be included in the amount in controversy includes (1) compensatory damages, (2) punitive damages, (3) the value of injunctive relief, and (4) attorneys' fees. *See Cohn,* 281 F.3d at 840.

ANALYSIS

1.  **The Value of the Real Property**

Union Pacific first says the jurisdictional floor is easily met because the value of the real property at issue – the easement – exceeds $75,000. To support this argument, Union Pacific relies on the general proposition that if a controversy relates to real property, the amount in controversy is measured by the value of that property. *See Opp.*, Dkt. 14, at 2 (citing *Chapman v. Deutsche Bank Nat'l Trust Co.*, 651 F.3d 1039, 1045 (9th Cir. 2011)).

But Union Pacific has not established that roadway easement is worth more than $75,000. Union Pacific says Jacob Allen's declaration establishes this point but Mr. Allen, who is a manager of track maintenance for the railroad, does not opine about property values; even though he uses the term "value," he is actually talking about maintenance and road construction costs. *See Allen Dec.,* Dkt. 3, ¶¶ 2-4. And even if Mr. Allen is attempting to offer opinion testimony regarding land values, that testimony lacks foundation because Mr. Allen does not say he is familiar with the value of Union Pacific's property or the value of similar properties. *Cf. Ruud v. United States*, 256 F.2d 460, 461 n.2 (9th Cir. 1958) ("Value may be proved by the opinion of any witness who possesses sufficient knowledge on the subject . . . It is difficult to lay down any exact rule in respect to the amount of knowledge a witness must possess, and the determination of the matter rests largely in the discretion of the trial judge.'") (citation omitted); *Cal-Bay Corp. v. United States*, 169 F.2d 15, 24 (9th Cir. 1948) ("The witnesses whose

testimony is complained of, all testified that they knew the land and its surroundings; and many of them that they had dealt in mining claims situated in the district, and had opinions as to the value of the property.")

To be sure, witnesses may offer opinions about land values even if they are not real estate appraisers. *Ruud,* 256 F.2d at 461 n.2. But those witnesses still have to establish foundational knowledge about the property in relation to similar properties. For example, "[a] farmer, who knows the property, knows the farming practice in the vicinity and the value of land in the neighborhood, is competent to give such opinions [*i.e.,* opinions regarding the highest and best use or the fair market value of real property]." *Id.* at 461.

Based on the parties' submissions, the Court does not know what the value of the real property is. Mr. Allen has not offered admissible testimony about the property's value. By the same token, however, the Maddens have not established that the property is worth less than $75,000 just because the entire parcel of property including the easement sold for $170 over a century ago, in 1905.

In sum, because Union Pacific has not introduced competent evidence regarding the value of the property, and in accordance with the strong presumption against removal jurisdiction, this Court cannot find that the amount in controversy more likely than not exceeds $75,000. The more relevant discussion, based on the evidence Union Pacific did submit, is what it will cost Union Pacific to comply with the Madden's sought-after injunction.

2.  **Union Pacific's Cost of Complying with and Injunction**

The Ninth Circuit has held that "where the value of a plaintiff's potential recovery . . . is below the jurisdictional amount, but the potential cost to the defendant of complying with the injunction exceeds that amount, it is the latter that represents the amount in controversy for jurisdictional purposes." *In re Ford Motor Co.*, 264 F.3d 952, 958 (9th Cir. 2001); *see also Ridder Bros. Inc. v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944).

Here, Mr. Allen has testified that Union Pacific will have to spend more than $75,000 if the Maddens obtain an injunction. He explains that

> Union Pacific uses the Roadway to gain access to the tracks and culverts for the purpose of maintenance and rehabilitation. It also owns a switch which can only be accessed via the Roadway and that switch is necessary for train operation. If access to that switch is impaired due to plaintiffs' sought after easement, the Union Pacific will have to hy-rail to the switch, requiring a shutdown of the main line corridor and significant train delays. In addition, if a derailment in that area occurs, Union Pacific needs the Roadway for access to address repair and secure the safety of its employees and the public. If this Court prohibits Union Pacific from placing objects, property, encroachments, fences, or gates on the Roadway and allows Plaintiff an easement over the Roadway, as plaintiff is seeking in this lawsuit, Union Pacific would have to re-route its crews and equipment each time it goes to the area in question or to the extent possible, build another road on the other side of the tracks to ensure unfettered access. The cost of doing so, in either circumstance, would exceed $75,000.

*Allen Dec.* ¶ 4.

One notable problem with this declaration is that Mr. Allen has not explained how the Maddens' non-exclusive use of the roadway would impair Union Pacific's right to use the road for access. For example, when Mr. Allen says Union Pacific needs to use

the road to access a switch, he does not attempt to explain why the railroad would be prevented from accessing the switch just because someone else can also use the road for access. The lack of an explanation is significant in context, given the Maddens' allegation that Union Pacific has been sharing this road with its neighbors for over 40 years.

Union Pacific also suggests in its briefing that it needs to park trucks, machines and equipment on the road and that this would violate the Maddens' sought-after injunction because the road is so narrow. *See Opp.*, Dkt. 14, at 4. There are a few problems this suggestion. First, once again, the railroad has not explained why now – after having allegedly shared the road with neighbors for over 40 years – it needs to start blocking the road with equipment. Second, there is not sufficient evidence in the record to substantiate Union Pacific's assertion that the road is so narrow that it cannot maintain the tracks without blocking the road. Third, even assuming Union Pacific does, in fact, need to block others from using the road in order to maintain the tracks, Mr. Allen's testimony is not specific enough to allow the Court to conclude that the railroad will more likely than not incur more than $75,000 in costs.

Mr. Allen says one potential alternative would be to build another road – for Union Pacific's sole use – on the other side of the tracks. But, at the same time, Mr. Allen suggests that he does not know if it is possible to build such a road. *See Allen Dec.* ¶ 4 ("Union Pacific would have to . . . *to the extent possible*, build another road on the other side of the tracks to ensure unfettered access.") (emphasis added). This estimate of

costs, then, is based on speculation.

Mr. Allen also points to a second alternative – rerouting crews and equipment each time Union Pacific "goes into the area." Here, Mr. Allen's declaration is conclusory. He does not provide any facts or variables that support or explain his cost estimate. He does not, for example, say how often crews would typically need to be re-routed and how much it would cost each time. Instead, he simply concludes that it would cost more than $75,000. This conclusory statement does not convince the Court that it is more likely than not that the Union Pacific will in fact incur more than $75,000 in costs to comply with an injunction. *Cf. Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003) ("conclusory allegations as to the amount in controversy are insufficient"); *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1127 (C.D. Cal. 2010) ("When applying the preponderance of the evidence standard to California Labor Code claims, many California district courts have refused to credit damage calculations based on variables not clearly suggested by the complaint or supported by evidence, concluding that the calculations are mere conjecture").

The Sixth Circuit faced a somewhat similar situation in *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006).[1] There, plaintiffs alleged that their cell phone providers falsely represented they would not charge for unanswered calls or calls that generated a busy signal. Plaintiffs sought an injunction preventing defendants from

---

[1] The Sixth Circuit assumed – but did not decide – that the district court could determine the amount in controversy from the perspective of either party (the "either viewpoint rule"). 460 F.3d at 829. Its analysis is thus relevant here, given that the Ninth Circuit has adopted the either-viewpoint rule. *See In re Ford Motor Co.*, 264 F.3d 952, 958 (9th Cir. 2001).

make these representations.  Defendants removed the case to federal court, arguing that the monetary cost of complying with the requested injunction would exceed $75,000.  Defendants said that, among other things, they would have to change their advertisements, their contracts, and their billing practices on a nationwide basis.  One provider asserted that changing billing practices would require a "complete overhaul" of their computer systems, which would easily cost more than $75,000.  *Id.*  The court found these general assertions insufficient.  The provider had not provided any evidence estimating compliance costs.  Additionally, it had not supplied details about their billing practices and had thus failed to show "why a 'complete overhaul' of them would be needed and what it would entail."  *Id.*

In this case, Mr. Allen does purport to estimate compliance costs.  But, as noted, his declaration is conclusory and lacks the sort of detail that would allow the Court to find, as a factual matter, that Union Pacific's compliance costs would more likely than not exceed $75,000.

As a result, the Court is left with significant doubts as to whether jurisdiction exists.  The Court will resolve that doubt in plaintiffs' favor.  After all, there is a "strong presumption" against removal jurisdiction and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. . . ."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  As the Supreme Court has explained, the "'dominant note'" of diversity jurisdiction is that of "jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of the overwhelming burden of 'business

that intrinsically belongs to the state courts' in order to keep them free for their distinctive federal business." *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 76 (1941), *quoted in Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

3.  **Attorneys' Fees Allegations**[2]

Union Pacific also argues that the amount in controversy is satisfied because plaintiffs are seeking to recover attorneys' fees.

If attorney fees are recoverable by plaintiff, the claim for fees is included in determining the amount in controversy, regardless of whether the fee award is mandatory or discretionary. *Galt G/S v. JSS Scandinavia*, 142 F3d 1150, 1155-56 (9th Cir. 1998). There is a split of authority, however, regarding whether *future* attorneys' fees should be included in calculating the amount in controversy. The Seventh Circuit has held that since future legal expenses can be avoided, they are not properly considered in calculating the amount in controversy when the suit is filed. *See Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 95 (7th Cir. 1998) ("Hatfields suing McCoys" could run up $50,000 legal fees in dispute over $10 garden rake, but that won't confer federal jurisdiction). The Fifth and Tenth Circuits, on the other hand, hold that reasonably recoverable future attorneys' fees should be included in calculating the amount in controversy. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th

---

[2] On October 23, 2013, the Maddens submitted an untimely reply brief that discussed the attorneys' fee issue at some length. By the time this brief was filed, the Court had already researched the relevant issues and had prepared a draft decision in the Maddens' favor. The Court will not address the points made in the reply brief. In its discretion, however, the Court did consider Mr. Featherston's "reply affidavit." *See* Dkt. 16. This affidavit was late, but not as late as the brief. *See* Dkt. 16 (affidavit filed October 15, 2013) and Dkt. 18-1 (the same affidavit, filed again on October 23, 2013).

Cir. 2002); *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998). The Ninth Circuit has not yet weighed in and district courts within the Ninth Circuit are split on the issue. *See Feller v. Hartford Life & Accident Ins. Co.*, 817 F. Supp. 2d 1097, 1107 (S.D. Ind. 2010) (collecting cases, including district-court cases within the Ninth Circuit).

The Court does not need to resolve that issue here, though, because even assuming future attorneys' fees could be included, the Court finds that remand is proper.

First, the Maddens will have to clear a relatively high hurdle to obtain an attorneys' fee award. A fee award is potentially available under Idaho Code § 12-121,[3] which provides,

> In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties, provided that this section does not alter, repeal or amend any statute which otherwise provides for the award of attorney's fees.

Idaho Code § 12-121. However, such fees "may be awarded by the court only when it finds, from the facts presented to it, that the case was brought, pursued or defended frivolously, unreasonably or without foundation . . . ." Idaho R. Civ. P. 54(e)(1). This has been held to require a finding that "the position of the nonprevailing party is plainly fallacious and, therefore, not fairly debatable." *Assocs., N.W., Inc. v. Beets*, 733 P.2d 824, 826 (Idaho Ct. App. 1987).

At this point, there are no facts suggesting that Union Pacific's defenses will be frivolous. But even assuming Union Pacific were to mount a frivolous defense, the Court

---

[3] Idaho law governs the award of attorneys' fees in this matter because federal courts must follow state law as to attorneys' fees in diversity actions. *See Interform Co. v. Mitchell*, 575 F.2d 1270, 1280 (9th Cir. 1978) (applying Idaho law).

cannot conclude that a fee award would more likely than not exceed $75,000.

The parties have submitted competing declarations on this point. *See Coddington Dec.*, Dkt. 14-1; *Featherston Dec.,* Dkt. 16. Both sides agree that $250 per hour is a reasonable hourly rate for plaintiffs' attorney. They disagree, however, about the number of hours plaintiffs' attorney will spend. Plaintiffs' attorney says the time incurred in litigating similar cases is typically around 175 hours, which would amount to $43,750 in fees, while Union Pacific says it would take at least 350 hours (or $87,500 in fees).

Given the strong presumption against removal jurisdiction, the Court cannot comfortably accept defense counsel's estimate of the other side's fees, and reject plaintiff's counsel's estimates of the fees that will be incurred. In other words, based on the current record, the Court cannot conclude it is more likely than not that plaintiffs' attorneys' fees will exceed $75,000. The motion to remand will therefore be granted.

**4.      Plaintiffs' Request for Attorney's Fees Associated with this Motion**

The Maddens request an award of fees and costs associated with this motion to remand. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Here, the Court declines to award the Maddens their attorneys' fees and costs. Although Union Pacific's evidence and arguments did not convince the Court that the amount in controversy more likely than not exceeds $75,000, Union Pacific's was not

objectively unreasonable. As the Ninth Circuit has explained, "removal is not objectively unreasonable solely because the removing party's arguments lack merit . . . ." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008).

5.  **Union Pacific's Motion to Strike the Featherston Declaration**

Union Pacific has moved to strike portions of Brent Featherston's declaration. *See* Dkt. 15. It says Mr. Featherston violated Federal Rule of Evidence 408 by testifying about "two years of alleged settlement negotiations." The Court did not need to consult these parts of Mr. Featerston's affidavit to resolve the pending motion. The motion to strike will therefore be denied as moot. Similarly, Union Pacific's later-filed motion to strike (Dkt. 19) is also moot to the extent it seeks to strike plaintiffs' response to the motion to strike.

6.  **Union Pacific's Motion to Strike the Maddens' Late-Filed Reply**

Union Pacific also takes issue with the Maddens' late reply brief. *See Motion to Strike,* Dkt. 19. Union Pacific argues that by submitting a late reply, the Maddens entirely waived their remand motion. *See Mot. Mem.*, Dkt. 19-1, at 6. Reply briefs are optional, however, so a party cannot waive the underlying motion by filing a late reply brief. *See* D. Idaho Local R. 7.1(b)(3) ("The moving party *may* submit a reply brief . . . .") (emphasis added). The only significant danger in that situation is that the Court will disregard the late-filed reply. In this case, and as already indicated above, the Court considered Mr. Featherston's late-filed reply affidavit, which was eight days late. The Court did not consider the later-filed reply memorandum, which was sixteen days

late. The Court will deny Union Pacific's request for sanctions.

## ORDER

**IT IS ORDERED THAT**

(1) Plaintiffs' Motion to Remand (Dkt. No. 9) is **GRANTED in part** and **DENIED in part.** The Court will **GRANT** the motion to remand to the extent plaintiffs seek to pursue this action in state court. This case is remanded to the District Court for the First Judicial District of the State of Idaho. Plaintiff's request for attorneys' fees associated with the motion to remand, however, is **DENIED.**

(2) Defendants' Motion to Strike (Dkt. 15) is denied as **MOOT.**

(3) Defendants' Motion to Strike (Dkt. 19) is denied as **MOOT** to the extent it seeks to strike plaintiffs' response to defendants' first-filed motion to strike. This Motion to Strike is **GRANTED** to the extent the Court has declined to consider the reply memorandum filed on October 23, 2013. Finally, the Court will **DENY** Union Pacific's request for attorneys' fees relative to this motion to strike.

DATED: February 11, 2014

_____
B. Lynn Winmill
Chief Judge
United States District Court